Bishop *v.* Little.

## Bishop *vs.* Little.

Where one, upon giving a deed of release and quitclaim, stipulated by parol that " if the deed did not pass and secure the land to the grantee, he would make it good ;"—this was taken as a promise to convey a legal and perfect title to the land, and therefore as void, by the statute of frauds.

A parol renewal of such promise, within six years, creates no legal obligation.

THIS case was *assumpsit* for money had and received ; and was tried before *Weston J.* at *October* term 1826, upon the general issue, and the plea of the statute of limitations.

It appeared that the plaintiff was a settler upon lands claimed by the Pejepscot proprietors ; and that his case, among others, was considered by the commissioners appointed by a resolve of the General Court of Massachusetts, passed *June* 29, 1798, to adjust the controversies between the proprietors and the settlers upon lands claimed by them ; and that it was awarded that he should pay $166, and thereupon should receive of the proprietors " a good and suffi-cient deed" of the land in his possession. This sum being paid *Dec.* 18, 1805 to the defendant, who was the agent of the proprietors, he on that day made and delivered to the plaintiff a deed, reciting the resolve, and his own appointment by the proprietors as their agent to make and execute deeds to the settlers pursuant to the award of the commissioners ; and their award of the sum to be paid by the plaintiff; and thereupon proceeding, "by virtue of said vote," to " sell, release, quitclaim and convey" to the plaintiff one hundred acres, " being part of said proprietors' undivided lands," particularly described in the deed. This deed contained no express covenants, and was made in the name of the agent only, professing to act under authority of the vote of the proprietors.

It was proved, though objected to by the defendant, that when the agent of the plaintiff was about to pay the money awarded, and take the deed, he expressed his fears that the title of the proprietors would not include the land possessed by the plaintiff; whereupon the

defendant affirmed that it would ; and that if the deed should not have the effect to pass and secure the land to the plaintiff, " he would make it good ;" and that by this assurance and promise the plaintiff's agent was induced to pay the money.

The money paid by all the settlers, under this arrangement, was distributed in 1806, among the Pejepscot proprietors, the defendant, who was one, retaining the largest portion for his own share.

Within six years prior to the commencement of this action, it was ascertained that the lands described in the deed made to the plaintiff did not belong to the Pejepscot proprietors, but fell within the limits of the Plymouth patent. And there was sufficient proof of a new promise by the defendant, within the same period.

The jury thereupon found both issues for the plaintiff, assessing damages to the amount of the money paid, with interest from the date of the writ ; the parties agreeing that if the parol testimony objected to should be adjudged inadmissible, and if, without it, the action was not supported ; or if, with it, the plaintiff was not entitled to recover, the verdict should be set aside, and the plaintiff nonsuited ; otherwise judgment should be entered for him.

Orr and Allen argued for the defendant. 1. The parties having reduced their contract to writing, the parol evidence was inadmissible. Paine v. McIntire, 1. Mass. 69. King v. King, 7. Mass. 496. Brigham v. Rogers, 17. Mass. 471. Howes v. Barker, 3. Johns. 498. The recitals in the deed imported covenants that they were true ; and these formed a sufficient consideration for the payment of the money. But if not, yet no deed of the proprietors was necessary to pass their title to the plaintiff, for their vote that a certain description of persons, to be designated by their agent, should take, was a sufficient conveyance ; the grantee being designated by the deed of the agent, Springfield v. Miller, 12. Mass. 417. Mayo v. Libby, ib. 339.

The parol evidence was also inadmissible, by the statute of frauds, it being in effect a contract for the conveyance of land.

2. The money cannot be recovered back as paid for a consideration which has failed. For either the deed contains covenants to

Bishop v. Little.

which the plaintiff may resort; or the absence of them is evidence that he agreed to take it without any, and at his own peril. *Watkins v. Otis*, 2. *Pick*. 97. *Gates v. Winslow*, 1 *Mass.* 65. *Wallis v. Wallis*, 4 *Mass.* 136. *Boyd v. Stone*, 11. *Mass.* 342. The defect of title was a common misfortune, not anticipated by the legislature, or the parties. Moreover, if here has been a failure of title, yet it cannot be said that the grantee has derived nothing from his deed, after it has afforded him a quiet possession and permanancy of profits for twenty years.

3. The new promise was not binding, being without consideration to support it. There was originally no legal contract between the defendant personally, and the plaintiff; he having acted as the agent of the corporation. And no moral obligation alone can support a new promise, unless there was once a contract which might have been enforced at law. *Mills v. Wyman* 3. *Pick*. 207.

*R. Williams* and *A. Belcher*, for the plaintiff. Though the deed is the only evidence of the matters it contains, and is not to be contradicted by parol testimony; yet the evidence objected to was admissible to prove an agreement independent of the deed, and wholly collateral to its stipulations. It was to establish a contract of the defendant that if *that* deed should not be sufficient to effect the intent of the parties, he would make it good. It was *this* promise, and not the deed, which induced the plaintiff to part with his money. *King v. Laindon* 8. *D. & E.* 379. *Davenport v. Mason* 15. *Mass.* 85. No part of this contract could be proved by the deed; nor was the deed, in any sense, the basis of this action.

2. The object of the plaintiff is to recover back his money, paid for a purpose which has never been realized. The commissioners awarded that he should have a " good and sufficient deed"; meaning a deed which should convey the estate; *Porter v. Noyes* 2. *Greenl.* 22; and which this deed did not. It was to be the deed of the proprietors; but this is the deed of the defendant alone. *Stenchfield v. Little* 1. *Greenl.* 231. 2. *Wheat.* 56. 6. *D. & E.* 606. 3. *Bos. & Pul.* 162. *Sugd.* 345. The money was paid under a void authority. Neither the commisssioners nor the defendant,

Bishop *v.* Little.

had power to act upon lands lying, as these were, beyond the limits of the Pejepscot title. 1. *Ld. Raym.* 742. *Lazell v. Miller* 15. *Mass.* 207. *Fowler v. Shearer* 7. *Mass.* 31. It was paid by mistake. The defendant alleged that the plaintiff's farm was within the Pejepscot title ; and the plaintiff, supposing it to be true, parted with his money; which he ought to recover back. *Union Bank v. Bank United States* 3. *Mass.* 74. *Garland v. Salem Bank* 9. *Mass.* 408. 2. *Day* 225. *D'Utrick v. Melcher* 1. *Dal.* 428. And if there was no mistake, the representations of the defendant were evidence of fraud in obtaining the money, which he ought therefore to refund ; and in this form of action. *Appleton v. Crowninshield* 8. *Mass.* 340. *Smith v. Bromley Doug.* 696. 9. *Johns.* 201. 307. *Bliss v. Negus* 8. *Mass.* 46. *White v. Cuyler* 6. *D. & E.* 176. 1. *New Rep.* 263. 1. *Caines' Ca.* 47. *Bree v. Holbeck Doug.* 654.

3. Nor can the defendant protect himself by the maxim *melior est conditio &c.* ; which applies only to monies paid under an illegal contract ; 6. *Mass.* 81. 4. *D. & E.* 561. 2. *W. Bl.* 1073 ;—nor on the ground that he has paid over the money to his principal ; for the payment was not made to the corporation, but to individuals, who. in that capacity, were not entitled to receive it.

The argument was made at the last *June* term ; and now the opinion of the Court was delivered by

MELLEN C. J. Several points made by the counsel in the argument, we shall pass over in giving our opinion, and attend to those only on which the decision is founded. As the deed in the case contains no covenants on the part of the proprietors, and there being no suggestion of fraud on their part as to any facts connected with the conveyance in question, we do not perceive on what principles of law an action could be maintained against them on any implied promise to refund the consideration to the plaintiff, in consequence of the failure, or rather want of title in them, at the time the conveyance was made. To guard against losses consequent on such an event, a purchaser should insist on such covenants as will protect him ; and the omission so to do, in the case of a fair sale, is a voluntary acknowledgement that he neither expects or intends to claim a

return of the consideration in any event. The correctness of this principle, if not admitted, seems to be well established—*Boswell vs. Vaughan*, Cro. Jac. 196. *Bree v. Holbeck*, Dougl. 654. *Johnson v. Johnson*, 3 Bos. & Pul. 162. *Gates v. Winslow*, 1 Mass. 65. *Wallis v. Wallis*, 4 Mass. 523. *Joyce v. Ryan*, 4 Greenl. 101. But it is contended that the promise, made by the defendant at the time the deed was delivered, being an express one, furnishes a solid ground on which this action may be maintained, the failure of title having taken place, which was the event on which the promise was to become binding. Waiving the question as to the admissibility of the parol proof objected to, and the liability of the defendant for monies received by him as the agent of the proprietors, and paid over to his principals, before any notice given him not to pay over the same, we will examine the nature of this express promise, and ascertain its legal effect. The report states that the defendant, at the time the deed was delivered, inasmuch as the plaintiff's agent expressed fears as to the validity of the title of the Pejepscot proprietors "promised that if the deed did not have the effect to pass and secure the said land to the plaintiff, he would make it good;" and that the plaintiff, relying on this assurance and promise, was induced to pay his money.— The meaning of the expression " he would make it good," could not have been that he would make that deed good, nor the land good ; but that if that deed was not sufficient to convey the title to the land, he would " make it good," that is, that the title should be perfected and legally conveyed ; for it must be remembered, at that time no doubt existed on the part of *Little*, or the proprietors, as to the soundness of the proprietary title. It seems to the court that such is the legal import of *Little's* promise ; but if it be considered as extending further, and amounting to a promise to indemnify the plaintiff, by way of damages, for the loss of the title, we apprehend the legal ground will not be changed. Considering the promise in either point of view, it is within the statute of frauds ; it is either a contract respecting real estate and the conveyance of the same, and then it is void ; or else it is a promise to pay the debt or answer for the default of another, and then also it is void ; the money when paid to *Little*, being the property of the proprietors ; and to them he has,

Bishop *v.* Little.

if not formally, at least substantially accounted. Besides, what consideration was there for the defendant's promise? No possible benefit had accrued or could accrue to him. But waiving this inquiry, the statute of frauds is a bar to the action which we cannot remove.

The case is not changed by the new promise which the jury have found was made by the defendant within six years next before the commencement of the action. It was only a repetition of the original promise, and can have no other effect than to revive that; but being revived, it has no legal obligation, for the reasons before mentioned.

It has been urged that the facts present a case of extreme hardship on the part of the plaintiff; but of this we are not at liberty to take judicial notice; but if we were, we should also direct our attention to those dangers which would be the consequence of leaving written contracts and title deeds subject to the influence of surrounding circumstances at the time of their execution; and of relying on accompanying or subsequent declarations of a grantor or his agent, after the lapse of many years, as independent contracts in relation to the title. To countenance such a principle and proceeding, would be to expose contractors to liabilities and consequences never anticipated, and against which the greatest care and prudence would afford but an uncertain protection.

After the most patient and anxious examination, we are all of opinion that this action cannot be maintained; and accordingly the verdict must be set aside and a nonsuit entered.

*Plaintiff nonsuit.*